UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MATEEM HUDSON #00505868, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:21-cv-00319 |
|  | ) | Judge Trauger |
| CORECIVIC, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM

Mateem Hudson, an inmate at Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application to proceed as a pauper (Doc. Nos. 5, 6), and a motion to appoint counsel (Doc. No. 2). This action is before the court for an initial review of the complaint under the Prison Litigation Reform Act.

**I.  Removal of Nathaniel Brinson as a Plaintiff and Warning to Plaintiff Hudson**

As an initial matter, the court notes that there are two plaintiffs listed in the caption of the complaint: Mateem Hudson and Nathaniel Brinson. Brinson, however, did not sign the complaint (Doc. No. 1 at 27), and there is nothing in the record reflecting that Brinson authorized Hudson to include him as a plaintiff in this case. Accordingly, the Clerk will be directed to update the docket to reflect that Hudson is the only plaintiff in this case. No filing fee or "strike" will be assessed against Nathaniel Brinson under the Prison Litigation Reform Act in connection with this case.

Plaintiff Hudson is warned that he cannot represent other inmates in federal court. *See Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) (quoting *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002)) ("[U]nder 28 U.S.C. § 1654, [] plaintiffs in federal court may not 'appear pro se where interests other than their own are at stake.'"). If Hudson continues to list other inmates

as plaintiffs without their apparent authorization in this or any other case, Hudson may be subject to sanctions. *See Hyland v. Stevens*, 37 F. App'x 770, 771 (6th Cir. 2002) (citations omitted) ("While [the court] will not absolutely foreclose an individual from initiating an action or pursuing an appeal in federal court, [the court] may impose prefiling restrictions on an individual with a history of repetitive or vexatious litigation.").

## II.     Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff filed a copy of his inmate trust account statement (Doc. No. 5) and a declaration (Doc. No. 6) that the court collectively construes as an application to proceed as a pauper. These documents reflect that the plaintiff cannot pay the full filing fee in advance. Accordingly, the plaintiff will be granted pauper status, and the $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

## III.    Initial Review

The court must dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c). The court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A.     Factual Allegations

The plaintiff alleges that, beginning in March 2020, CoreCivic and CoreCivic staff at Trousdale Turner were deliberately indifferent to the risk COVID-19 posed to inmates' health and safety. (Doc. No. 1 at 3, 13–14, 16.) On April 5, 2020, the Fox-Charlie housing pod was changed into "a quarantine pod." (*Id.* at 4.) On April 8, Unit Manager Dana Thomas moved inmates from

2

the Fox-Charlie pod to the plaintiff's Bravo-Alpha pod. (*Id.*) Some of the relocated inmates were untested (*id.*), and others had already tested positive for COVID-19. (*Id.* at 7.)

One of the relocated inmates was Nathaniel Brinson, who was placed in the plaintiff's cell. (*Id.* at 4.) The plaintiff had a pre-existing hernia that had gone untreated despite "CoreCivic medical staff [being] objectively aware of" the plaintiff's condition. (*Id.* at 8.) The plaintiff alleges that he was denied hernia treatment "before, during, and post-COVID-19" (*id.* at 16) because CoreCivic made "health care decisions based on costs." (*Id.* at 8–9.) The plaintiff and Brinson were not provided sanitation materials or protective equipment, and they shared four showers and six phones with 118 other inmates. (*Id.* at 4–5, 7.)

On April 11, 2020, CoreCivic staff revealed that some Bravo-Alpha pod residents were "sick with the virus," and that these inmates would be "moved into quarantine cells" in Bravo-Alpha pod. (*Id.* at 5.) About 20 residents were moved to quarantine cells, including Brinson after he tested positive for COVID-19. (*Id.*) The plaintiff alleges that he tested negative at that time, but that he "experienced symptoms of the coronavirus," including "jitters, vertigo or dizziness, moistness around the eyes and face[,] and loss of hair." (*Id.* at 6.) He also suffered "emotional and psychological injuries" (*id.* at 7), and he would later test positive for COVID-19. (*Id.*) The exposure to COVID-19 "exacerbated" the plaintiff's pre-existing hernia. (*Id.* at 9.)

Bravo-Alpha residents complained that the quarantine cells were overcrowded. (*Id.* at 5.) The plaintiff also alleges that CoreCivic failed to quarantine new and symptomatic prisoners, failed to test symptomatic prisoners, lied that there was no COVID-19 at the prison, and refused to give inmates masks. (*Id.* at 4.) Assistant Warden Vincent Vanteel said "the decision to use Bravo-Alpha pod for a quarantine pod was medical and that [he] and his staff [were] following the orders of medical and the CDC." (*Id.* at 5.)

The plaintiff alleges that inmates tampered with locks on quarantine cells, allowing inmates to "roam around the pod and mingle with other prisoners." (*Id.* at 6.) Prior to the pandemic, CoreCivic had been "put on notice" that the unsecure locks allowed inmates "to breach security and attack other inmates . . . or just roam the pod or go into other inmate[s'] cells." (*Id.*) Warden Raymond Byrd "adopted or promulgated [the] decision to design" Trousdale Turner with unsecured cell locks (*id.*), and he personally "failed to properly train and/or supervise" Trousdale Turner staff regarding "tampering [with] security devices on cell doors." (*Id.* at 11–13.) The plaintiff alleges that inmates were also allowed to leave their cells when CoreCivic staff "failed to secure [cell] doors" after pill call and tray service. (*Id.* at 6.)

The plaintiff alleges that Trousdale Turner had "the highest per capita coronavirus infection rate [among state prisons] in the country by mid-May" 2020. (*Id.* at 10.) He brings this action against Unit Manager Thomas, Assistant Warden Vanteel, Warden Byrd, and Health Services Administrator Josh Lyons. (*Id.* at 1, 3, 26–27.) He also brings this action against CoreCivic (*id.* at 1, 3, 26), alleging that CoreCivic was understaffed (*id.* at 6, 11) and had a policy or custom of having "quarantine cells in close quarters with non-exposed prisoners." (*Id.* at 13.) The plaintiff also alleges that CoreCivic failed to train its employees "on how to safely house inmates during the COVID-19 pandemic" (*id.* at 7), and on the "structural integrity of the prison cell security locks." (*Id.* at 9, 12–13.) The plaintiff requests monetary damages. (*Id.* at 21, 25.)

**B.     Legal Standard**

To determine whether the complaint "fails to state a claim on which relief may be granted" under the applicable statutes, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the

factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

    **C.    Discussion**

"There are two elements to a [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

    **1.    Dismissal of Redundant Official-Capacity Claims**

The plaintiff brings this action against the defendants in their individual and official capacities. (Doc. No. 1 at 26–27.) Because the defendants are CoreCivic employees (*id.* at 3, 26–27), the official-capacity claims are essentially against CoreCivic. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). And because CoreCivic is also named as a defendant, the official-capacity claims will be dismissed as redundant. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims).

    **2.    Dismissal of Duplicative Substantive Due Process Claim**

The complaint references substantive due process. (Doc. No. 1 at 12–13.) To the extent the plaintiff is attempting to assert a stand-alone substantive due process claim, the court does not analyze claims under "the more generalized notion of 'substantive due process'" where another

5

specific "amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior." *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, as discussed below, the Eighth Amendment provides the proper framework to analyze the plaintiff's asserted claims. Because the plaintiff does not "meaningfully distinguish [his] substantive due process claim from his" Eighth Amendment claims, any substantive due process claim will be dismissed as duplicative. *See Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-cv-501, 2021 WL 790771, at *13 (W.D. Mich. Mar. 2, 2021) (citing *Kanuszewski v. Mich. Dep't of Health and Hum. Servs.*, 927 F.3d 396, 404 n.9 (6th Cir. 2019)).

### 3. Dismissal of Untimely Medical Care Claim

The plaintiff alleges that he had a "pre-pandemic" hernia that has gone untreated (Doc. No. 1 at 8, 16) and that this "injury was exacerbated" by exposure to COVID-19. (*Id.* at 9.) "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). Here, however, any hernia-based claim for inadequate medical care is untimely.

A prisoner's claim "is subject to dismissal without any further proof" at the initial review stage "if 'the allegations . . . show that relief is barred by the applicable statute of limitations.'" *Surles v. Anderson*, 678 F.3d 452, 458 (6th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). The statute of limitations for Section 1983 claims in Tennessee is one year. *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). The limitation period "begins to run when the plaintiff knows or has reason to know that the act

providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)).

Here, the court deems the complaint filed on the signature date of April 5, 2021. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted) (explaining that, absent evidence to the contrary, the court assumes that a prisoner filed a complaint by handing it over to prison officials for mailing "on the date he or she signed" it). Thus, the plaintiff's claims are untimely if they are based on acts that he knew or had reason to know occurred prior to April 5, 2020.

In the context of a chronic medical issue, only "[a]ctual actions by [defendants] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations." *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466–67 (6th Cir. 2010). The plaintiff alleges that he suffered from a "pre-pandemic" hernia (Doc. No. 1 at 8), and he identifies the pandemic as beginning on March 21, 2020. (*Id.* at 3.) The allegations therefore reflect that the plaintiff has been aware of this medical need since before April 5, 2020. The plaintiff does not identify any specific instances of a defendant refusing to provide medical care for his alleged hernia, and the allegation that exposure to COVID-19 "exacerbated" his hernia is entirely conclusory. Accordingly, the plaintiff's hernia-based claim for deliberate indifference to serious medical needs will be dismissed as untimely.

    **4.    Conditions of Confinement Claim**

The plaintiff's primary contention is that the defendants were deliberately indifferent to the risk COVID-19 posed to inmates' health and safety. The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain," *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citation omitted), which imposes a duty on jail officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). "An Eighth

7

Amendment conditions of confinement claim [] contains both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a plaintiff to "allege that he has been deprived 'of the minimal civilized measure of life's necessities.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834).

Here, for the purpose of initial review, the court concludes that the plaintiff satisfies the objective component. The Sixth Circuit describes COVID-19 as a "highly infectious" virus that "can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). The plaintiff alleges that prison staff relocated a mix of untested and COVID-19-positive inmates from "a quarantine pod" to his housing pod. One of these relocated inmates was placed in the plaintiff's cell and later tested positive. The plaintiff tested negative but "experienced symptoms of the coronavirus" before eventually testing positive and experiencing "emotional and physical injuries." The plaintiff also alleges that he was not provided sanitation materials or protective equipment, and that he shared four showers and six phones with 118 other inmates, some of whom had tested positive. Finally, the plaintiff alleges that inmates housed in quarantine cells freely mingled with other prisoners because cell locks were not secure. That is sufficient to allege that the plaintiff was deprived of the minimal civilized measure of life's necessities. *See Jefferson v. Lee*, No. 3:20-cv-00469, 2020 WL 4586177, at *3–

8

4 (M.D. Tenn. Aug. 10, 2020) (finding that prisoner's allegations of lax COVID-19 precautions satisfied objective component of Eighth Amendment conditions-of-confinement claim); *Mass v. Core Civic Inc.*, No. 3:20-cv-00798, 2020 WL 5816232, at *2 (M.D. Tenn. Sept. 30, 2020) (same).

"[T]he subjective component of a deliberate indifference claim," meanwhile, "must be addressed for each [defendant] individually." *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)). The court will therefore consider whether the plaintiff plausibly alleges that each of the five defendants knew of and disregarded the risk to health and safety caused by the plaintiff's conditions of confinement.

First, the plaintiff names Health Services Administrator Josh Lyons as a defendant, but he does not make any specific factual allegations regarding Lyons in the body of the complaint. Even under the lenient standards for reviewing pro se pleadings, that is insufficient to state a claim against Defendant Lyons. *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citation omitted) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

Second, the plaintiff alleges that Unit Manager Thomas moved a mix of untested and COVID-19-positive inmates from "a quarantine pod" to the plaintiff's housing pod on April 8, 2020. For the purpose of initial review, this allegation is sufficient to satisfy the subjective component of this claim against Defendant Thomas. *See Jefferson*, 2020 WL 4586177, at *4 (allowing Eighth Amendment conditions-of-confinement claim to proceed past initial review against defendant alleged to have "move[d] inmates who had tested positive for COVID-19 into Plaintiffs' pod").

Third, the plaintiff alleges that Assistant Warden Vanteel acknowledged "that the decision to use [the plaintiff's] pod for a quarantine pod was medical." But the plaintiff does not actually

9

allege that Vanteel was aware of the conditions in the plaintiff's pod, or that Vanteel specifically acted or failed to act in a manner reflecting a disregard for these conditions. The plaintiff therefore fails to state an Eighth Amendment claim against Defendant Vanteel. *See id.* at *2 (dismissing claim against defendant not alleged to have had "any involvement . . . in the decision to move COVID-positive inmates into the same pod as COVID-negative inmates").

Fourth, the plaintiff alleges that Warden Byrd "adopted or promulgated [the] decision to design" Trousdale Turner with unsecure cell locks, and that Byrd personally "failed to properly train and/or supervise" staff regarding "tampering [with] security devices on cell doors." "For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have 'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (quoting *Phillips*, 534 F.3d at 543). "[A] supervisor may be liable under § 1983 if he 'abandon[s] the specific duties of his position . . . in the face of actual knowledge of a breakdown in the proper workings of the department.'" *Winkler*, 893 F.3d at 898 (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)). "This liability, however, exists only where some 'execution of the supervisors' job function result[s] in [the p]laintiff's injury.'" *Id.* (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).

Here, liberally construing the complaint and drawing all reasonable inferences in the plaintiff's favor, he alleges that Byrd was responsible for the cell lock system at Trousdale Turner, knew that the locks did not function properly prior to the pandemic (*see* Doc. No. 1 at 6 ("CoreCivic was put on notice concerning the nature of the security locks prior to the pandemic.")), and failed to train staff regarding inmates' ability to tamper with the cell locks. The plaintiff also alleges that this failure led to inmates tampering with quarantine cell locks, which contributed to

10

the allegedly inhumane conditions of confinement in the plaintiff's housing pod by allowing untested or COVID-19-positive inmates to "roam around the pod and mingle with other prisoners." At this early stage in the proceedings, that is sufficient to "plausibly allege that [Byrd] 'did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.'" *Peatross v. City of Memphis*, 818 F.3d 233, 243 (6th Cir. 2016) (quoting *Gregory*, 444 F.3d at 751). Accordingly, Plaintiff's Eighth Amendment claim against Defendant Byrd will not be dismissed at this time.

Fifth, the plaintiff brings this action against CoreCivic, the private entity contracted to manage Trousdale Turner. (Doc. No. 1 at 3.) To state a claim against a private entity like CoreCivic, the plaintiff must allege that it had a policy or custom that directly caused him to suffer a constitutional violation. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). The plaintiff attributes his allegedly inhumane conditions of confinement to several policies or customs of CoreCivic, including failure to quarantine new and symptomatic prisoners, failure to test symptomatic prisoners, refusing to give prisoners masks or sanitation materials, understaffing, placing "quarantine cells in close quarters with non-exposed prisoners," and failure to train its employees "on how to safely house inmates during the COVID-19 pandemic" and on the "structural integrity of the prison cell security locks." These allegations are sufficient to state an arguably non-frivolous Eighth Amendment claim against CoreCivic.

### 5. State Law Claim

The plaintiff also asserts a state law negligence claim against all five defendants. (Doc. No. 1 at 2, 15–16.) "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1)

11

a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

For substantially the same reasons explained in the above discussion of the plaintiff's conditions-of-confinement claim, the court will allow the plaintiff's negligence claim to proceed against Defendants Thomas, Byrd, and CoreCivic. *See Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) ("Edwards's state-law negligence claim relates to the same set of operative facts as his Eighth Amendment claim for deliberate indifference, and therefore [may proceed]."). However, the plaintiff fails to allege specific conduct by Defendants Lyons and Vanteel that was the factual and legal cause of his asserted injuries, so this claim will not proceed against these two defendants.

## IV. Motion to Appoint Counsel

In the motion to appoint counsel and supporting documentation, the plaintiff requests the appointment of counsel because he is indigent, the issues in this case are factually and legally complex, he has limited access to legal materials, and he has limited legal knowledge. (Doc. No. 2; Doc. No. 3 at 2–4; Doc. No. 4.) Because this is a civil action, however, the plaintiff does not have a constitutional right to the appointment of counsel, and it is "justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993)). At this early stage in the proceedings, the plaintiff has demonstrated that he can communicate effectively with the court. Moreover, the plaintiff's asserted circumstances are common to many inmates, not exceptional. Accordingly, the plaintiff's motion will be denied, but without prejudice to renewing his request if circumstances warrant doing so in the future.

## V. Conclusion

For these reasons, the plaintiff will be granted pauper status and his motion to appoint counsel will be denied. This case will proceed for further development against Defendants Thomas and Byrd in their individual capacities, and against CoreCivic, on the plaintiff's state-law negligence claim and Eighth Amendment conditions-of-confinement claim. All other claims and defendants will be dismissed.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge