UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATEEM HUDSON,<br><br>    Plaintiff,<br><br>v.<br><br>CORECIVIC et al.,<br><br>    Defendants. | Case No. 3:21-cv-00319<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Pro se and *in forma pauperis* Plaintiff Mateem Hudson has filed an amended complaint under 42 U.S.C. § 1983 alleging that his civil rights were violated by the Tennessee Department of Correction (TDOC) and TDOC Assistant Commissioner Lee Dotson, among others, during his incarceration at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. (Doc. No. 36.) Hudson's amended complaint also asserts state law claims of negligent infliction of emotional distress (NIED) against TDOC, intentional infliction of emotional distress (IIED) against Dotson, and negligence against both defendants. (*Id.*) TDOC and Dotson filed a motion to dismiss Hudson's federal claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 67.) Hudson has responded in opposition (Doc. Nos. 74, 75), and TDOC and Dotson have filed a reply (Doc. No. 77). For the reasons that follow, the Magistrate Judge will recommend that the defendants' motion to dismiss (Doc. No. 67) be granted. The Magistrate Judge will further recommend that Hudson's NIED,

IIED, and negligence claims against TDOC and Dotson be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state claims on which relief can be granted.

I.  Background

    A.  Factual Background[1]

Hudson's amended complaint addresses a number of issues arising from events that took place at TTCC between 2019 and 2022. (Doc. No. 36.)

First, Hudson alleges that Defendant CoreCivic, Inc.,[2] TDOC, and TTCC staff were deliberately indifferent to the risk that the COVID-19 pandemic posed to the health and safety of incarcerated people and failed to prevent the spread of COVID-19 at TTCC. (*Id.*) In April 2020, TTCC officials moved incarcerated people, some of whom had tested positive for COVID-19 and some of whom had not been tested for the virus, from a quarantine pod to Hudson's pod. (*Id.*) Hudson states that he and others were not given cleaning supplies or personal protective equipment (PPE) and that he was forced to share four showers and six telephones with 118 other people. (*Id.*) Hudson states that, because TTCC was understaffed, correctional officers came to work while positive for COVID-19, did not wear PPE, and did not enforce quarantine practices. (*Id.*) Hudson initially tested negative for COVID-19 but states that he "experienced symptoms of the coronavirus," including "jitters, vertigo or dizziness, moistness around the eyes and face[,] and loss of hair." (*Id.* at PageID# 194, ¶¶ 52, 53.) Hudson later contracted COVID-19. (Doc. No. 36.)

---

[1]   The facts in this Report and Recommendation are taken from Hudson's amended complaint (Doc. No. 36) and are presumed to be true for purposes of resolving the defendants' motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

[2]   CoreCivic, Inc., is a private for-profit corporation that contracts with TDOC to operate TTCC. *See generally* Trousdale Turner Correctional Center, CoreCivic, https://www.corecivic.com/facilities/trousdale-turner-correctional-center (last visited Jan. 3, 2023).

Second, Hudson alleges that the defendants, including TDOC, denied Hudson access to medical treatment for a hernia and other medical conditions. (*Id.*) In 2019, a TTCC doctor denied Hudson's request for hernia surgery. (*Id.*) The doctor also denied Hudson's request for a therapeutic diet and failed to inform him about an alternative dietary option. (*Id.*) In 2021, Hudson was notified that he had high blood pressure and was told by a nurse practitioner that CoreCivic and TTCC had known that Hudson suffered from this condition for more than a year but had not told him. (*Id.*) Hudson states that his untreated high blood pressure led to the worsening of other pre-existing medical conditions, including his hernia. (*Id.*) Hudson filed grievances regarding this issue (Doc. No. 37-4) and placed sick call requests seeking another hernia evaluation to which he did not receive a response. (Doc. No. 36.)

Third, Hudson alleges that prison officials failed to protect him from sexual abuse. Hudson alleges that, on August 7, 2021, a correctional officer retaliated against Hudson by bringing a specific incarcerated person into his cell and encouraging a sexual encounter between Hudson and that person, which led to Hudson being coerced into having sex. (*Id.*) On August 26, 2021, prison officials removed that person from Hudson's cell, but knowingly placed another person in Hudson's cell with whom Hudson was unable to decline sexual contact. (*Id.*) On August 13, 2021, Hudson filed a grievance relating to the first incident and requesting a single-person cell. (Doc. No. 37-8.) The grievance was denied. (*Id.*) Hudson appealed the denial, and the grievance chairman deemed Hudson's grievance inappropriate, a response that TTCC's warden approved. (*Id.*) Hudson again appealed and, on September 28, 2021, Dotson agreed with the supervisor's response and denied Hudson's appeal. (*Id.*)

Fourth, Hudson alleges that prison officials violated his constitutional rights by operating TTCC in an unsafe and understaffed manner, including by allowing physical violence among the

3

population and allowing drugs to circulate in the prison. (Doc. No. 36.) Hudson alleges that this resulted in him overdosing on drugs. Hudson also alleges that prison officials discriminated against him on the basis of his race in addressing his overdose. (*Id.*) On October 23, 2020, Hudson filed a grievance requesting a single-person cell to protect himself from being attacked. (Doc. No. 37-10.) The supervisor who reviewed the grievance deemed it inappropriate. (*Id.*) That decision was ultimately appealed to Dotson, who approved the response. (Doc. No. 36.) Hudson also asked to never be housed with security threat group (STG) members. (*Id.*) The next year, a correctional officer assigned Hudson to live with a STG member and known drug user. (*Id.*) The cellmate gave Hudson drugs, leading to Hudson's overdose on November 4, 2021. (*Id.*) Hudson alleges that, after the overdose, he was racially discriminated against by a correctional officer who gave a false, misleading, and racially discriminatory report to the unit manager, leading the unit manager to place Hudson in segregation. (*Id.*) While Hudson was in segregation, the same correctional officer allowed other incarcerated people to take Hudson's property. (*Id.*) Hudson filed a Title VI grievance complaining about these incidents, which was denied. (Doc. No. 37-9.) Hudson appealed that decision. (*Id.*) Dotson denied the appeal, agreeing with the initial determination that the allegations did not amount to a Title VI violation. (*Id.*)

  **B.**  **Procedural History**

  Hudson initiated this action by filing a verified complaint under 42 U.S.C. § 1983 against CoreCivic and four TTCC officials. (Doc. No. 1.) The Court granted Hudson's motion to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), and 42 U.S.C. § 1997e(c), allowing his negligence and Eighth Amendment conditions of confinement claims to proceed against CoreCivic and two prison officials in their individual capacities. (Doc. Nos. 8, 9.)

Hudson then filed a motion for leave to amend his complaint (Doc. No. 10), which the Court granted (Doc. No. 32). Hudson's amended complaint added § 1983 and state law claims and several new defendants, including TDOC and Dotson.[3] (Doc. No. 36.) Hudson attached eighty pages of exhibits to the amended complaint, including grievances, TDOC policies, and sick call requests. (Doc. No. 37.)

In their motion to dismiss Hudson's claims against them, TDOC and Dotson argue that TDOC is entitled to Eleventh Amendment sovereign immunity from Hudson's § 1983 claims and that Hudson's § 1983 claims against Dotson cannot proceed because Hudson does not allege facts sufficient to establish Dotson's personal involvement in the alleged constitutional violations. (Doc. No. 68.) Hudson responded in opposition, conceding that he "does not allege any specific right to recovery against TDOC" (Doc. No. 75, PageID# 653, ¶ 2) but arguing that his allegations regarding Dotson's personal involvement in denying his grievances are sufficient to state a claim under § 1983. (Doc. Nos. 74, 75.) TDOC and Dotson filed a reply, arguing that Hudson's claims against TDOC should be dismissed based on his admission that he does not have a right to relief. (Doc. No. 77.) They also argue that Dotson's role in the grievance process does not subject him to liability under § 1983. (*Id.*)

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the

---

[3] As in his original complaint, Hudson's amended complaint lists Nathaniel Brinson as a co-plaintiff. (Doc. No. 36.) Hudson filed a motion seeking to join Brinson as a co-plaintiff (Doc. No. 33), which the Court denied (Doc. No. 43).

plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Gardner v. United States*, 443 Fed. App'x 70, 73 (6th Cir. 2011) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "'so long as [the materials] are referred to in the complaint and are central to the claims contained therein[.]'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d

426, 430 (6th Cir. 2008)); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

Because Hudson appears pro se, the Court construes his filings "'liberally'" and holds his amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### B. 28 U.S.C. §§ 1915(e)(2) and 1915A

Because Hudson is incarcerated and is proceeding *in forma pauperis*, the Court has an ongoing obligation under the Prison Litigation Reform Act and *in forma pauperis* statute to ensure that the operative pleading does not include claims that are frivolous or malicious, seek monetary damages from a defendant who is immune from such relief, or do not state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. The standard for determining if a pleading states a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A is the same as that for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

### III. Analysis

#### A. Hudson's Claims Against TDOC

TDOC argues that it is entitled to sovereign immunity under the Eleventh Amendment from Hudson's § 1983 claims and should be dismissed from this action. (Doc. No. 68.) TDOC does not address Hudson's state law claims against it for NIED or negligence. (Doc. No. 36.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states." *Babcock v. Michigan*, 812 F.3d 531, 533 (6th Cir. 2016) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). "[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002)).

The Sixth Circuit has held that Eleventh Amendment sovereign immunity may extend to state agencies, including TDOC. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (holding that "[TDOC] and the prisons under its control are agencies of the state of Tennessee and are entitled to Eleventh Amendment immunity from suit for damages" (first citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984))). However, the Eleventh Amendment does not bar claims against a state "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set

forth in *Ex Parte Young*, 209 U.S. 123 (1908) applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). None of these exceptions applies to Hudson's claims.

### 1. State Waiver

The Tennessee Constitution provides that "[s]uits may be brought against the state in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. 1, § 17. Tenn. Code Ann. § 20-13-102(a), in turn, provides that no court may hear claims brought against the state or officers of the state that implicate state funds, *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986), unless the legislature has expressly waived that immunity, *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991). Tennessee's legislature has not waived the state's immunity to claims brought under § 1983, and sovereign immunity thus bars Hudson's claims against TDOC under that statute. *See Berndt*, 796 F.2d at 881.

Hudson's state law claims fare no better. While a plaintiff may pursue certain claims for monetary damages against the state through the Tennessee Claims Commission, Tenn. Code Ann. §§ 9–8–301–9-8-307, the state otherwise retains its immunity. *See Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (holding that, outside the Tennessee Claims Commission, "the state retains its immunity from suit, and a claimant may not seek relief from the state"). The state has not expressly waived its immunity to state tort claims brought in federal court. *See also, e.g.*, *Jefferson v. Ferrer, Poirot, & Wansbrough*, Civ. No. 3:10-0754, 2011 WL 3025894, at *5 (M.D. Tenn. July 25, 2011) (finding that state waiver exception did not apply to plaintiff's negligence claims against Tennessee mental health agencies because Tennessee has consented to suit for negligence claims in Tennessee Claims Commission but not federal court), *report and recommendation adopted by* 2011 WL 5117789 (M.D. Tenn. Oct. 27, 2011); *Burton v. Durnin,* No. 3:11-CV-429, 2012 WL 946747, at *7–8 (E.D. Tenn. Mar. 20, 2012) (finding that Tennessee has not consented to suit in federal court for state tort claims including negligence); *Johnson v. Tennessee*, No. 2:20-cv-02581,

2021 WL 1823115, at *7–8 (W.D. Tenn. May 6, 2021) (finding that sovereign immunity barred plaintiff's state law claims, including negligence, because Tennessee has consented to suit within the Tennessee Claims Commission but not in federal court).

### 2. Congressional Abrogation

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate state sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. Congress has not abrogated Tennessee's immunity to lawsuits brought under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler*, 865 F.3d at 410 (citing *id.*).

### 3. *Ex Parte Young*

The *Ex Parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). The exception applies only to suits against state officials in their official capacities, *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013), and "does not apply where, as here, a plaintiff sues a state agency, not a state official" *Miller v. Tenn. Dep't of Hum. Servs.*, Civ. No. 3-15-1025, 2016 WL 3213641, at *3 (M.D. Tenn. June 10, 2016).

Because no exception to Eleventh Amendment sovereign immunity applies to Hudson's claims against TDOC, those claims must be dismissed.

### B. Hudson's Claims Against Dotson

Dotson argues that Hudson has failed to allege that he was personally involved in the claimed deprivations of Hudson's constitutional rights so as to make him liable for those

deprivations under § 1983. (Doc. No. 68.) Dotson does not address Hudson's state law claims for IIED or negligence. (Doc. No. 36.)

1. **Section 1983 Claims**

Section 1983 provides a civil cause of action to any person deprived of federal rights by a person acting under color of state law. 42 U.S.C. § 1983. "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722 (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Dotson does not dispute that he acted under color of state law as TDOC Assistant Commissioner of Prison Operations. (Doc. No. 68.) The question before the Court is whether Hudson has sufficiently alleged that Dotson deprived Hudson of a right secured by the Constitution or laws of the United States.

Because Hudson has sued Dotson in his individual capacity, Hudson must adequately allege that Dotson was personally involved in violating Hudson's rights. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (holding that supervisory officials' failure to halt subordinates' harassment of plaintiff was an inadequate basis for § 1983 liability); *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *2–5 (M.D. Tenn. Mar. 5, 2020) (explaining that the personal involvement standard applies only to individual-capacity claims for monetary relief). Liability under § 1983 "'cannot be imposed under a theory of *respondeat superior*'" and "'proof of personal involvement is required for a supervisor to incur personal liability.'" *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). Specifically,

> a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a

plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, a supervisor's failure to act, without more, is not a basis for § 1983 liability.

Most of Hudson's allegations against Dotson are broad, conclusory statements such as "Dotson . . . continues to arbitrarily deny Plaintiff Hudson his substantive due process rights and protection against state-actors['] abuse of powers." (Doc. No. 36, PageID# 230, ¶ 242.) Hudson's only allegations that Dotson was personally involved in the alleged constitutional violations are that Dotson approved the denials of three grievances filed by Hudson. (Doc. Nos. 36, 37-8–37-10.) Hudson filed a grievance after being retaliatorily housed with an individual who coerced him into sex. (Doc. Nos. 36, 37-8.) Dotson concurred with the determination that Hudson's grievance was inappropriate. (Doc. Nos. 36, 37-8.) Hudson filed a grievance requesting a single-person cell to avoid being attacked. (Doc. No. 36, 37-10.) That grievance was deemed inappropriate by the prison supervisor (Doc. No. 37-10) and Dotson approved the supervisor's response. (Doc. No. 36.) Finally, Dotson denied Hudson's appeal of the denial of his Title VI complaint. (Doc. No. 37-9.)

These allegations are not sufficient to support a claim against Dotson in his individual capacity under § 1983. Prison officials cannot be held liable in their individual capacities under § 1983 for denying a grievance. *Shehee*, 199 F.3d at 300 (holding that prison official defendants did not violate plaintiff's rights when plaintiff alleged only that they denied his grievances and failed to remedy the alleged behavior); *Grinter*, 532 F.3d at 575 (affirming district court's dismissal of individual capacity claims against prison officials who affirmed findings of guilt in disciplinary process but did not "commit[ ] any actual acts . . . [or] acquiesce[ ] in the conduct of their employees"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) (affirming district

court's dismissal of claim against warden where plaintiff's primary argument was that warden failed to respond to grievances). Hudson does not allege that Dotson "encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]" and does not allege that Dotson was personally involved in his claims in any other way. *Hays*, 668 F.2d at 874. Thus, Hudson fails to allege facts showing personal involvement by Dotson that would support an individual capacity claim under § 1983. Hudson's § 1983 claims against Dotson should be dismissed.

### 2. State Law Claims

#### a. Intentional Infliction of Emotional Distress

The basis for Hudson's IIED claim against Dotson is his allegations that TTCC officials intentionally placed Hudson in a cell with a known drug user and, after Hudson overdosed on drugs given to him by that person, sent Hudson to segregation based on the racially discriminatory comments of a correctional officer. (Doc. No. 36.) To state a claim for IIED under Tennessee law, a plaintiff must allege that the conduct complained of (1) was intentional or reckless; (2) was "'so outrageous that it is not tolerated by civilized society'"; and (3) "'result[ed] in serious mental injury.'" *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31 (Tenn. 2005) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

Outrageous conduct for purposes of an IIED claim under Tennessee law is defined as conduct that is "'atrocious,' 'utterly intolerable,' and 'beyond all bounds of decency.'" *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 685 (M.D. Tenn. 2018) (quoting *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977)); *see also, e.g.*, *Evans v. Detlefsen*, 857 F.2d 330, 337–38 (6th Cir. 1988) (holding that a reasonable jury could find outrageous conduct when plaintiff suffered personal vindictiveness, threats, intimidation, and verbal and physical abuse from a police officer after a minor traffic offense); *Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App.

13

1975) (affirming jury verdict for plaintiff on IIED claim where defendant had preserved the body of a premature stillborn infant in a jar of formaldehyde and displayed the jar to the mother). Hudson's allegations that Dotson denied Hudson's grievance appeals, without more, do not rise to the level of outrageous conduct. Hudson has failed to state a claim of IIED on which relief may be granted.

### b. Negligence

Hudson also asserts a state law negligence claim against all defendants. (Doc. No. 36.) A Tennessee claim of negligence requires proof of "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 286 (6th Cir. 2017) (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)).

"Prison officials have a duty to exercise ordinary and reasonable care for the protection of the persons in their custody." *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992). Again, however, Hudson's only allegations about Dotson's conduct are that Dotson denied Hudson's grievance appeals on three occasions. Hudson has not alleged facts to support a reasonable inference that Dotson's denial of those grievances fell below the relevant standard of care or that the denials were the cause of any injury to Dotson. "Cause in fact or 'actual cause' means 'that the injury or harm would not have occurred "but-for" the defendant's negligent conduct.'" *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). While Hudson has included allegations regarding the harm that was the subject of his grievances, Hudson has not alleged any harm resulting from Dotson's affirming the denial of those grievances.

Hudson also has not alleged facts sufficient to support a plausible inference that Dotson's affirming the denial of his third grievance, in which he requested a single-person cell to prevent physical attack, led to his drug overdose a year later. Proximate cause exists when

> (1) the tortfeasor's conduct [was] a substantial factor in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Tumminello*, 678 F. App'x at 287 (quoting *West*, 172 S.W.3d at 553). While Hudson alleges that he overdosed when he took illegal drugs given to him by his cellmate, he has not alleged facts that could support a finding that the overdose was a reasonably foreseeable consequence of Dotson's affirming the denial of his request for a single-person cell. Hudson has not alleged facts sufficient to state a claim of negligence under Tennessee law.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that TDOC and Dotson's motion to dismiss (Doc. No. 67) be GRANTED, that Hudson's Section 1983 claims against TDOC and Dotson be DISMISSED under Rule 12(b)(6), and that Hudson's state law claims against TDOC and Dotson be DISMISSED under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 6th day of January, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge