UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATEEM HUDSON,<br><br>　　　Plaintiff,<br><br>v.<br><br>CORECIVIC et al.,<br><br>　　　Defendants. | Case No. 3:21-cv-00319<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Aleta A. Trauger, District Judge

**<u>REPORT AND RECOMMENDATION</u>**

　　Nearly three years have passed since pro se and *in forma pauperis* Plaintiff Mateem Hudson initiated this civil rights action under 42 U.S.C. § 1983 (Doc. No. 1), and more than two years have passed since he filed his amended operative complaint adding new defendants (Doc. No. 36). In that time, the Court has repeatedly identified and explained the requirements for Hudson to effect service of process on the defendants he named and has effectively extended the service deadline three times for Hudson to show cause why the Court should permit his late service. (Doc. Nos. 9, 44, 115, 148.) But Hudson has not complied with this Court's May 26, 2022, April 18, 2023, and June 24, 2023 orders regarding service, and Defendants CoreCivic executives David M. Garfinkle, Todd J. Mollenger, and Harley G. Lappin; Trousdale Turner Correctional Center (TTCC) Health Services Administrator Josh Lyons; former TTCC Unit Manager Ashleigh VanDyke; and TTCC Unit Manager Jeffrey Wehr have not yet appeared or responded to Hudson's amended complaint. Specifically, Hudson has not returned completed service packets for Garfinkle, Mollenger, Lappin, Lyons, or Wehr. While Hudson has returned a completed service

packet for VanDyke, the U.S. Marshals Service has not been able to effect service of process on her. (Doc. Nos. 54, 138.)

For the reasons that follow, the Magistrate Judge will recommend that the Court dismiss Hudson's claims against Garfinkle, Lappin, Lyons, Mollenger, VanDyke, and Wehr without prejudice under Federal Rule of Civil Procedure 4(m) for Hudson's failure to effect service of process.

I.      **Relevant Background**

Hudson asserts § 1983 claims as well as state-law claims arising out of his incarceration at TTCC in Hartsville, Tennessee. (Doc. Nos. 1, 36.) The Court granted Hudson's application to proceed *in forma pauperis*, screened his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e, and allowed his Eighth Amendment violation claims and negligence claims to proceed against Defendant CoreCivic and against Defendants TTCC Warden Raymond Byrd and TTCC Unit Manager Dana Thomas in their individual capacities. (Doc. Nos. 8, 9.) The Court dismissed all other claims and defendants for failure to state claims on which relief could be granted. (Doc. Nos. 8, 9.)

The Court ordered Hudson to complete service packets for CoreCivic, Byrd, and Thomas and return them to the Clerk's Office within thirty days, and, because Hudson proceeds *in forma pauperis*, the Court directed the U.S. Marshals Service to effect service of process on the unserved defendants as required by Federal Rule of Civil Procedure 4(c)(3). (Doc. No. 9.) The Court also warned Hudson that failure to timely return the completed service packets "could jeopardize his prosecution of this action[.]" (*Id.* at PageID# 63.) Hudson returned completed service packets for CoreCivic, Byrd, and Thomas; the Clerk of Court issued summonses addressed to them; and they appeared and answered Hudson's complaint. (Doc. Nos. 12, 16–18, 27–30.)

2

On February 27, 2022, Hudson filed an amended complaint, adding Defendants Wellpath; LLC (Wellpath); Correctional Health Care Companies, Inc. (CHC); the City of Hartsville; Trousdale County, Tennessee; TTCC Case Manager Nicole Buchmeier; former TTCC Warden Martin Frink; Dr. Terrence Leveck; VanDyke; Wehr; CoreCivic executive Damon T. Hininger; Garfinkle; Mollenger; Lappin; Lyons; the Tennessee Department of Correction (TDOC); TDOC Assistant Commissioner Lee Dotson; and TTCC Sergeant Julie McCarthy.[1] (Doc. No. 36.) The Court ordered Hudson to complete service packets for the unserved defendants and return them to the Clerk's Office by no later than June 14, 2022, in order for the Marshals Service to effect service of process on them. (Doc. No. 44.) The Court warned Hudson that failure to return completed service packets "may result in a recommendation that Hudson's claims against these defendants be dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect service of process or under Federal Rule of Civil Procedure 41(b) for failure to prosecute" his claims. (*Id.* at PageID# 395.)

Hudson returned completed service packets for Wellpath, CHC, Hartsville, Trousdale County, Buchmeier, Frink, Leveck, Dotson, and TDOC; the Clerk of Court issued summonses for these defendants; the Marshals Service returned proof of service affidavits for each summons; and these defendants appeared and responded to Hudson's amended complaint. (Doc. Nos. 47–53, 55, 57–60, 64, 65, 67–72, 79, 80.) The Court has since dismissed TDOC and Dotson as defendants on

---

[1] Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). The rationale for this rule is that "pro se prisoners have no control over delays between the prison authorities' receipt of [a pleading] and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Houston v. Lack*, 487 U.S. 266, 273–74 (1988) (emphasis in original). Courts assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Brand*, 526 F.3d at 925. All references herein to Hudson's filings use the dates on which Hudson signed his filings.

their motion. (Doc. No. 93.) Hudson did not return completed service packets for Garfinkle, Hininger, Lappin, Lyons, McCarthy, Mollenger, or Wehr.

On April 18, 2023, the Court found that more than a year had passed since Hudson initiated this action and that Hudson had not completed and returned service packets for Lyons, McCarthy, and Wehr. (Doc. No. 115.) The Court ordered Hudson to show cause by May 9, 2023, why the Magistrate Judge should not recommend that the Court dismiss his claims against Lyons, McCarthy, and Wehr for failure to effect service of process under Rule 4(m). (*Id.*) The Court warned Hudson "that failure to comply with this Order to Show Cause will likely result in a recommendation that his claims against Lyons, McCarthy, and Wehr be dismissed." (*Id.* at PageID# 1223.) Hudson did not respond to the Court's show-cause order, but filed several other motions. (*e.g.,* Doc. Nos. 118–21, 131–35, 139–41.)

On June 24, 2023, the Court issued another show-cause order regarding Hudson's failure to effect service of process on Garfinkle, Hininger, Lappin, and Mollenger and ordered Hudson to show cause by July 17, 2023, why the Magistrate Judge should not recommend that the Court dismiss Hudson's claims against them for failure to effect service of process under Rule 4(m). (Doc. No. 148.) The Court again warned Hudson "that failure to comply with" the Court's show-cause order would "likely result in a recommendation that his claims against Garfinkle, Hininger, Lappin, and Mollenger be dismissed." (*Id.* at PageID# 2172.)

Hudson then completed and returned service packets for McCarthy and Hininger; the Clerk of Court issued summonses addressed to these defendants; the Marshals Service filed proof of service affidavits for both summonses; and McCarthy and Hininger appeared and answered the amended complaint. (Doc. Nos. 149, 153–57, 160–63.) Hudson also responded to the Court's June 24, 2023 show-cause order, stating that he returned service packets for Hininger and McCarthy

and had previously attempted to do so on July 10, 2023. (Doc. No. 150.) Hudson did not return completed service packets for Garfinkle, Lappin, Lyons, Mollenger, or Wehr.

Hudson completed and returned a service packet for VanDyke, and the Clerk of Court issued a summons addressed to VanDyke at TTCC and forwarded it to the Marshals Service to effect service of process. (Doc. No. 47.) The Marshals Service returned VanDyke's summons unexecuted with a note explaining that VanDyke could not be served because she no longer works at TTCC. (Doc. No. 54.) The Court directed TTCC Warden Vince Vantell to file under seal VanDyke's last-known address and directed the Clerk of Court to re-issue a sealed summons to VanDyke at the new address. (Doc. No. 114.) Vantell complied with the Court's order (Doc. No. 116) and the Clerk of Court re-issued a sealed summons to VanDyke at her last-known address (Doc. No. 117). On May 23, 2023, the Marshals Service again returned VanDyke's summons unexecuted with a note explaining that they attempted to serve VanDyke at her last-known address three times, but no one answered the door. (Doc. No. 138.)

## II. Legal Standard

"[T]he requirement of proper service of process 'is not some mindless technicality[,]'" *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)), nor is it "meant to be a game or obstacle course for plaintiffs[,]" *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 455 (E.D. Pa. 2015). Rather, it goes to the very heart of a court's ability to hear a case. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (explaining that "[s]ervice is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit'" (citation omitted)). Where personal jurisdiction is not

properly established, a court cannot exercise its authority consistent with due process of law. *See Friedman*, 929 F.2d at 1156–57.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996). In light of this plain language, it is well established that Rule 4(m) empowers a court to dismiss complaints without prejudice "upon the court's own initiative with notice to the plaintiff." *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1174 (9th Cir. 2002); *see also Friedman*, 929 F.2d at 1155 n.4 (noting that "the issue of ineffective service of process may be raised sua sponte").

The Sixth Circuit has directed district courts to consider seven factors in "deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:"

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;

(5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;

(6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

(7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Oakland Physicians' Med. Ctr., LLC*, 44 F.4th at 569.

**III.    Analysis**

    **A.    Hudson's Failure to Return Completed Service Packets for Garfinkle, Lappin, Lyons, Mollenger, and Wehr Warrants Dismissal under Rule 4(m)**

In the nearly two years since Hudson filed his amended complaint asserting claims against Garfinkle, Lappin, Lyons, Mollenger, and Wehr,[2] Hudson has still not taken the first step of returning completed service packets for each of them. The Court has repeatedly reminded Hudson that he is responsible for completing service packets for the unserved defendants and returning them to the Clerk's Office within the specified time. (Doc. Nos. 44, 115, 148.) The Court also has warned Hudson that failure to do so would likely result in the recommendation that his claims against these unserved defendants be dismissed under Rule 4(m) for failure to effect service of process or under Rule 41(b) for failure to prosecute his claims. (*Id.*). Despite the Court's warnings, Hudson's response to the June 24, 2023 show-cause order, and his return of completed service packets for McCarthy and Hininger, Hudson has not offered any explanation for his failure to

---

[2]    Hudson does not identify Hininger, Garfinkle, Mollenger, and Lappin in the caption of the amended complaint, but refers to them as defendants several times within the body of the document. (Doc. No. 36.)

return completed service packets for Garfinkle, Lappin, Lyons, Mollenger, and Wehr and why the Court should permit his late service of process.[3]

Hudson therefore has not shown good cause for an extension of time to complete service under Rule 4(m). Considering the seven relevant factors that the Sixth Circuit articulated in *Oakland Physicians Medical Center, LLC*, 44 F.4th at 568–69, the Court finds that a further discretionary extension of the service deadline is not warranted either. The second and fourth factors—prejudice to the defendants and prejudice to the plaintiff—weigh in favor of granting Hudson a discretionary extension. There is no indication that Garfinkle, Lappin, Lyons, Mollenger, and Wehr would be unduly prejudiced by a further extension of the service deadline. *See id.* at 571 (noting that "examples of prejudice" include "'a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events'") (quoting *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012)). The events at the center of Hudson's claims are relatively recent as his complaint alleges that the acts in question took place between 2019 and January 2022. (Doc. No. 36.)

The Court's refusal to further extend the service deadline may cause substantial prejudice to Hudson because his claims would likely be time-barred if he re-asserted them in a new action. Claims brought under § 1983 are subject to "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104); *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir.

---

[3] The Court extended three times the deadline for Hudson to show cause why the Court should allow his late service of process on these unserved defendants, thereby effectively extending his service deadline.

2018) (same). However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013). Here, Hudson's allegations in the amended complaint span from 2019 to February 2022. (Doc. No. 36.) Over a year has passed since the alleged incidents occurred, therefore it is likely that Hudson's claims would be time-barred if he reasserted them in a new action. However, "the running of the statute of limitations does not *require* a court to grant a discretionary extension[.]" *Oakland Physicians' Med. Ctr., LLC,* 44 F.4th at 570 (collecting cases).

The remaining factors weigh against an extension. A further extension would be well beyond the 90-day time period for service under Rule 4(m), as more than 700 days have passed since Hudson filed his amended complaint; there is no indication that the defendants have actual notice of this lawsuit; and there do not appear to be any unique equitable factors weighing in favor of another extension. While Hudson's pro se status would weigh in favor of a further extension, there is no indication that Hudson made a good faith effort to return completed service packets for Garfinkle, Lappin, Lyons, Mollenger, and Wehr as required to effect service of process on them, even though the Court has explained to Hudson his responsibility in that regard and provided him with an opportunity to explain why the Court should have extended the time for him to do so rather than dismiss his claims. (Doc. Nos. 115, 148.)

Because Hudson has not returned completed service packets for Garfinkle, Lappin, Lyons, Mollenger, and Wehr in compliance with Rule 4 and this Court's orders despite ample time to do so, notice that failure to do so may result in dismissal, and an opportunity to show good cause to excuse his failure, dismissal without prejudice under Rule 4(m) is appropriate.

B.     **Service of Process on VanDyke**

Hudson completed a service packet for VanDyke, but the Marshals Service has not been able to effect service of process. When a plaintiff proceeds *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." 28 U.S.C. § 1915(d). Rule 4(c) "dovetails" with § 1915, *Byrd*, 94 F.3d at 219, by providing that "[t]he court must" "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court" "if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . ." Fed. R. Civ. P. 4(c)(3).

> Together, Rule 4(c)[(3)] and 28 U.S.C. § 1915([d]) stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Byrd*, 94 F.3d at 219.

That does not mean, however, that an incarcerated pro se plaintiff proceeding *in forma pauperis* automatically shows good cause for extending the Rule 4(m) deadline when the Marshals Service has been unable to effect service of process on a defendant. Courts in this circuit consider the *in forma pauperis* plaintiff's conduct and the totality of the circumstances in determining whether good cause exists to extend the Rule 4(m) deadline. For example, in *Abel v. Harp*, the Sixth Circuit considered the fact that the plaintiff diligently attempted to contact the Marshals Service "when he knew there was a problem with service on the defendants" and also considered the fact that "[t]he Marshals Service [incorrectly] advised [the plaintiff] that it had served all of the defendants" before holding that good cause existed to extend the Rule 4(m) deadline. 122 F. App'x 248, 252 (6th Cir. 2005). By contrast, in *VanDiver v. Martin*, the court found that a pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend the Rule 4(m) deadline

where the plaintiff "remained silent after being put on notice that [ ] Defendants had not been served" at the address he provided because the defendants "no longer worked for the Michigan Department of Corrections." 304 F. Supp. 2d 934, 941, 942 (E.D. Mich. 2004); *see also Freeman v. Collins*, Civ. Action No. 2:08-cv-00071, 2011 WL 4914873, at *5 (S.D. Ohio Aug. 15, 2011) (finding that pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend Rule 4(m) deadline where he "took no action to cure the lack of service for a significant period . . ."). Similarly, in *Staub v. Nietzel*, the Sixth Circuit found that good cause did not exist to extend the Rule 4(m) deadline despite the "administrative snafu" that the Clerk of Court did not issue a summons for the unserved defendant because the plaintiff "was on notice" that the defendant remained unserved, failed to inquire about the status of service or provide additional information for service to the court, and "fail[ed] to provide any reasonable explanation for sitting idly by for six years[.]" Case No. 22-5384, 2023 WL 3059081, at *8–9 (6th Cir. Apr. 24, 2023). The court there found *VanDiver* analogous and distinguished *Byrd* on the basis that the plaintiff "receive[d] notice that [the defendant] remained unserved" and failed to act for years. *Id.* at *9.

Here, Hudson first provided the address of VanDyke's last-known employment at TTCC, and the Clerk of Court issued a summons to VanDyke at that address. (Doc. No. 47.) The Marshals Service returned that summons unexecuted on July 6, 2022, with a notation that VanDyke "no longer [works at] this facility."[4] (Doc. No. 54, PageID# 454.) On April 18, 2023, the Court ordered TTCC Warden Vantell to file a notice under seal providing VanDyke's last-known address (Doc. No. 114.) Two days later, Vantell filed a notice under seal with VanDyke's last-known address (Doc. No. 116), and the Clerk of Court re-issued a sealed summons to VanDyke using that address

---

[4] The Court notes that the caption on the docket for this filing erroneously states that the summons was returned "executed."

11

and forwarded it to the Marshals Service to attempt service (Doc. No. 117). The Marshals Service attempted to serve VanDyke at the sealed address three times, but no one answered the door. (Doc. No. 138.) On May 23, 2023, the Marshals Service that it returned the sealed summonses as "unexecuted." (*Id.*)

Ten months have passed since Hudson learned that the Marshals Service diligently but unsuccessfully attempted to effect service of process on VanDyke. In that time, Hudson has actively participated in this litigation by his numerous filings, none expressing his concern for the fact VanDyke has not been served. Therefore, Hudson has not shown that good cause exists to further extend the service deadline. *Staub*, 2023 WL 3059081, at *8–9.

The inquiry does not end here. The Court also must consider the seven relevant factors that the Sixth Circuit articulated in *Oakland Physicians Medical Center, LLC*, 44 F.4th at 568–69, to determine whether a further discretionary extension of the service deadline is warranted. Here, too, the second and fourth factors—prejudice to the defendants and prejudice to the plaintiff—weigh in favor of granting Hudson a discretionary extension: there is no indication that VanDyke would be unduly prejudiced by a further extension of the service deadline, *see id.* at 571, and the Court's refusal to further extend the service deadline may cause substantial prejudice to Hudson because his claims would likely be time-barred if he re-asserted them in a new action, see *Eidson*, 510 F.3d at 634 and see *Jordan*, 885 F.3d at 415.

The remaining factors weigh against an extension. A further extension would be well beyond the 90-day time period for service under Rule 4(m), as more than 700 days have passed since Hudson filed his amended complaint; there is no indication that the defendants have actual notice of this lawsuit; and there do not appear to be any unique equitable factors weighing in favor of another extension. Despite returning a service packet for VanDyke, Hudson has nevertheless

failed to act diligently in attempting to serve her. Therefore, dismissal of Hudson's claims against VanDyke without prejudice under Rule 4(m) is appropriate.

IV. **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Hudson's claims in the amended complaint (Doc. No. 36) against Defendants Garfinkle, Lappin, Lyons, Mollenger, VanDyke, and Wehr be DISMISSED WITHOUT PREJUDICE under Federal Rule of Procedure 4(m).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 11th day of March, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge