IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATEEM HUDSON, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 3:21-cv-00319 |
| | )  Judge Aleta A. Trauger |
| CORECIVIC, INC. et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM

Defendant Wellpath, LLC,[1] has moved for judgment on the pleadings in this action brought by pro se Plaintiff Mateem Hudson. (Doc. No. 151.) Hudson brings claims under federal and state law against Wellpath and many other defendants related to his incarceration at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. (Doc. No. 36.) Hudson filed a response in opposition to Wellpath's motion. (Doc. No. 167.) Wellpath did not file an optional reply.

For the reasons that follow, the court will deny Wellpath's motion for judgment on the pleadings.

## I. RELEVANT BACKGROUND

### A. Relevant Factual Background

The following relevant factual background is taken from Hudson's amended complaint and is assumed to be true for purposes of the motion for judgment on the pleadings.

---

[1] Wellpath is a private for-profit corporation that contracts with the Tennessee Department of Corrections to provide healthcare services in its prisons. Wellpath is formerly known as Correct Care Solutions, LLC, and is identified as Correct Care Solutions or CCS in Hudson's pleadings.

Hudson is incarcerated at TTCC, which is operated by CoreCivic, Inc. (Doc. No. 36.) CoreCivic contracts with Wellpath to provide medical care to those housed at TTCC.[2] (*Id.*) Much of Hudson's amended complaint addresses allegations about how CoreCivic and TTCC officials addressed the early days of the COVID-19 pandemic, including claims regarding the quarantining of infected inmates, the provision of personal protective equipment and cleaning supplies, and safety measures to ensure that inmates did not move among housing pods without authorization. Although Hudson nominally includes Wellpath as a defendant to several of his claims related to TTCC's COVID-19 procedures, he does not allege specific conduct by Wellpath.

Hudson's allegations regarding Wellpath arise in the context of his claims related to alleged denial of medical care for a hernia. Specifically, Hudson alleges that, while incarcerated at TTCC, he had a medical appointment with Dr. Terrence Leveck to address a diagnosed hernia and that Leveck did not order hernia repair surgery. (*Id.*) Hudson alleges that Leveck "was employed by Defendants CoreCivic, [Wellpath,] and/or CHC." (Doc. No. 36, PageID# 187, ¶ 18.) Hudson alleges that Wellpath, Leveck, and other defendants failed to provide Hudson with hernia repair surgery even though they knew that a hernia can impede an inmate's ability to engage in "routine and necessary activities" such as "walking, running, [or] lifting" because those activities could "cause the tissue to bulge out of the abdominal wall [and cause] intense and excruciating pain[.]" (*Id.* at PageID# 202–03, ¶ 102.) Hudson states that "he was exposed to a substantial and readily

---

[2] Hudson alleges that Defendant Correctional Healthcare Companies (CHC), which has not appeared in this action, "is a direct or indirect wholly owned subsidiary of Defendant [Wellpath], and at all times relevant to this Complaint, Defendants CHC contracted with TTCC/CoreCivic to provide medical services to inmates, and supervised and implemented medical care, and Defendant CHC was the direct employer of the medical staff operating at TTCC." (Doc. No. 36, ¶ 15.)

2

Case 3:21-cv-00319   Document 185   Filed 03/14/24   Page 2 of 12 PageID #: 2452

apparent risk" because he could not undergo hernia repair surgery and that "he has suffered physical and emotional harm . . . ." (*Id.* at PageID# 202, ¶ 104.)

Hudson attributes the decision not to treat his hernia with surgery to a "policy" that favors "decisions [ ] based on costs" over decisions "based on medical judgment" in a way that "prevents medical professionals like [Leveck] from exercising medical judgment in deciding what treatment to provide and when it should be provided." (*Id.* at PageID# 203, ¶ 105.) Hudson alleges that Leveck told him "surgery [for hernia] was only approved for 'emergency circumstances' and life-threatening situation[s]" and that Hudson "suffers from 'reducible hernia' meaning [that the bulging tissue] is not . . . incarcerated and [could] be pushed back inside[,] [the] types of hernias [for which] . . . surgeries" are denied. (*Id.* at PageID# 204, ¶ 108.) Hudson alleges that these "prison policy statements have limited prison officials' discretion by imposing a specific prerequisite" to providing medical treatment to inmates. (*Id.* at PageID# 204, ¶ 110.)

More broadly, Hudson alleges that Wellpath had a "custom and practice of . . . fail[ing] to provide adequate medical staffing[,]" which caused Hudson "physical injuries, emotional distress, and pain and suffering." (*Id.* at PageID# 210, ¶ 138.) Hudson states that Wellpath promulgated and implemented these policies because, as a "for-profit entit[y], denial and indifference to serious medical needs of prisoners means less expense [that] result[s] in higher profits to [Wellpath]." (*Id.* at PageID# 211, ¶ 144.) Hudson alleges that Wellpath's conduct amounts to deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.[3] Hudson also claims negligence under Tennessee law against all defendants.

---

[3] Hudson variously identifies his Section 1983 claims as arising under the Eighth and Fourteenth Amendments. Based on the substance of Hudson's allegations, the court construes the claims as alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment.

3

### B. Relevant Procedural History

Hudson initiated this action on April 21, 2021, by filing a complaint asserting claims under 42 U.S.C. § 1983 and Tennessee law against CoreCivic and several TTCC officials. (Doc. No. 1.) The court granted Hudson's application to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), and 42 U.S.C. § 1997e(c), allowing his state-law negligence claims and Eighth Amendment condition of confinement claims to proceed. (Doc. Nos. 8, 9.) Hudson then filed an amended complaint, which is now the operative pleading. (Doc. No. 36.) The amended complaint asserts First, Fourth, Fifth, Eighth, and Fourteenth Amendments claims under § 1983 and various state law claims against Wellpath, Leveck, and several other defendants. (Doc. No. 36.)

Wellpath filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and certified that it served its motion and supporting memorandum of law on Hudson by mail on July 29, 2023. (Doc. Nos. 151, 152.) On October 30, 2023, the court issued an order for Hudson to show cause why the court should not grant Wellpath's motion because Hudson had not filed a timely response, as required by this court's Local Rule 7.01 and Federal Rule of Civil Procedure 6. (Doc. No. 166.) The court ordered Hudson to respond by November 27, 2023. (*Id.*)

Hudson filed a response in opposition to Wellpath's motion for judgment on the pleadings on November 3, 2023 (Doc. No. 167),[4] accompanied by a cover letter stating that he had not filed

---

[4] The Clerk of Court received and docketed Hudson's response and cover letter on November 21, 2023 (Doc. Nos. 167, 167-1), and received and docketed an identical copy of the response on November 28, 2023 (Doc. No. 168). Hudson signed and dated these filings on November 3, 2023. (Doc. Nos. 167, 167-1, 168.) Under the "prison mailbox rule[,] . . . a pro se prisoner's [filing] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)).

a timely response because he had been "held in segregation . . ." (Doc. No. 67-1, PageID# 2304). Wellpath then filed a motion to dismiss Hudson's claims against it under Rule 41(b) for his failure to prosecute his claims (Doc. No. 169) in which it argued that, although Hudson filed a response in opposition to its motion, Hudson failed to comply with the court's order because he "did not show cause regarding his failure to prosecute under Rule 41(b)." (Doc. No. 169, PageID# 2314.) Wellpath also requested in the alternative that, if the court declined to dismiss Hudson's claims, that the court extend Wellpath's deadline to file a reply in support of its motion for judgment on the pleadings to December 5, 2023. (Doc. No. 169.)

On December 9, 2023, Hudson filed a further response to the court's show-cause order, asking the court to "presume that [his] response [was] timely filed, given that [he] is incarcerate[d] and probably did not receive" Wellpath's motion for judgment on the pleadings and supporting memorandum of law "promptly." (Doc. No. 170, PageID# 2316.)

The court found that Hudson had adequately responded to the court's show-cause order in the cover letter (Doc. No. 167-1) to his response in opposition to Wellpath's motion, denied Wellpath's motion to dismiss (Doc. No. 169) under Rule 41(b), and granted Wellpath's request for an extension of time to file an optional reply by extending its deadline to January 9, 2024. (Doc. No. 171.) Wellpath did not file an optional reply in support of its motion for judgment on the pleadings.

## II. LEGAL STANDARD

The standard for resolving a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) mirrors the standard for resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 886 (M.D. Tenn. 2018). The court must "construe the

complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Hudson proceeds pro se, the court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

Wellpath makes two arguments in its motion for judgment on the pleadings: First, Wellpath argues that "the entirety of [Hudson's] claims against [it] are governed by the Tennessee Health Care Liability Act ("THCLA")" and that Hudson has not complied with that statute's pre-suit notice and certificate of good faith filing requirements. (Doc. No. 152, PageID# 2187.) Second, Wellpath argues that Hudson has not adequately pleaded that Wellpath was deliberately indifferent to his serious medical needs. (Doc. No. 152.) Neither argument is meritorious.

#### A. Failure to Comply With the THCLA

Wellpath argues that, by bringing Section 1983 claims alleging violations of his Eighth and Fourteenth Amendment rights, Hudson "improperly constitutionalizes . . . [state law] medical negligence claims" that, properly construed, are subject to the THCLA. (Doc. No. 152, PageID# 2187.) The THCLA applies to all health care liability actions brought under Tennessee law, including "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). When the THCLA applies, a plaintiff must provide "written notice of the potential claim to each health care provider that will be named defendant at least sixty (60) days before the filing of a complaint" and file with the complaint a certificate stating that the plaintiff consulted a medical expert who affirmed that there is a good-faith basis for the plaintiff's claims. *Id.* § 29-26-121(a)(1); *id.* § 29-26-122(a). Wellpath argues that Hudson's undisputed failure to provide pre-suit notice or a certificate of good faith requires the court to dismiss his claims against it. (Doc. No. 152.) Hudson argues in response that "[s]tate malpractice procedural requirements do not apply to constitutional civil rights claims in federal court . . . ." (Doc. No. 167, PageID# 2298.)

7

Hudson is correct. Wellpath's argument ignores decisions from the Sixth Circuit and this court's finding that, because filing requirements like those included in the THCLA conflict with the Federal Rules of Civil Procedure, they do not apply to state-law health care liability claims when the claims are made in federal court. *See, e.g.*, *Albright v. Christensen*, 24 F.4th 1039, 1044–48 (6th Cir. 2022) (holding that Michigan statutory affidavit-of-merit requirement conflicted with Federal Rules of Civil Procedure 8, 9, 11, and 12 and therefore did not apply in a diversity action alleging medical malpractice); *Gallivan v. United States*, 943 F.3d 291, 293–95 (6th Cir. 2019) (holding that Ohio Civil Rule requiring medical actions be accompanied by an affidavit of merit conflicted with Rules 8, 9, and 12 and therefore did not apply in Federal Tort Claims Act case alleging medical negligence); *Smith v. CoreCivic, Inc.*, 618 F. Supp. 3d 695, 704–05 (M.D. Tenn. 2022) (applying *Albright* to conclude that, "[i]nsofar as the THCLA plainly requires the service of written notice in advance of suit . . . and the filing of an affidavit in conjunction with the complaint,. . . it, like the Michigan law, conflicts with the Federal Rules of Civil Procedure" and does not apply to medical negligence action brought in federal court).

Further, while the THCLA's definition of a health care liability action "is facially broad enough to encompass a deliberate indifference claim under § 1983 based on the failure to provide necessary health care . . . , the Sixth Circuit has never construed the state statute to apply so broadly as to limit a litigant's ability to pursue claims based on the violation of his constitutional rights." *Heard v. Parker*, No. 3:17cv-01248, 2018 WL 6435863, at *9 (M.D. Tenn. Dec. 6, 2018) (citing *Reed v. Speck*, 508 F. App'x 415 (6th Cir. 2012), in which the Sixth Circuit, pre-*Albright*, affirmed dismissal of a medical malpractice claim for failure to comply with the THCLA but addressed deliberate indifference claims on their merits). The THCLA does not apply to Hudson's Section 1983 claims.

Wellpath does not distinguish or acknowledge this line of controlling authority, and the authority on which it relies does not address the application of the THCLA in federal court or to federal civil rights claims. Its argument that the THCLA requires judgment on the pleadings in its favor therefore fails.

### B. Failure to Plead a Plausible Deliberate Indifference Claim Under § 1983

Wellpath next argues that Hudson's claim that Wellpath was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights fails because Hudson's amended complaint "is fraught with [Hudson's] own admissions that he was treated by medical providers" and "merely disagrees with treatment decisions made by [these] medical providers." (Doc. No. 152, PageID# 2191.) Wellpath argues that, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law.'" (*Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 869 n.5 (6th Cir. 1976).) Hudson responds that his claims against Wellpath are municipal liability claims because Leveck "was following the policy of . . . his employer Wellpath LLC" in denying him hernia repair surgery. (Doc. No. 167, PageID# 2299.)

To state an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must allege facts sufficient to support the claim's objective and subjective components. *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). To satisfy the objective component, the plaintiff must allege facts that "establish the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The subjective component is satisfied by allegations that the defendant "acted with 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Blackmore*, 390 F.3d at 895).

9

Wellpath is correct that courts generally "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment" and that the latter are unlikely to survive the deliberate indifference analysis unless the treatment provided is "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 & n.5. But Wellpath's arguments do not address the claims Hudson makes against it in this action. Hudson alleges that Leveck denied him needed hernia repair surgery because of a Wellpath "[p]olicy . . . [of,] rather than making decisions based on medical judgment, the decision is based on costs, in a way that prevents medical professionals like [Leveck] from exercising medical judgment in deciding what treatment to provide and when it should be provided." (Doc. No. 36, PageID# 203, ¶ 105.)

Hudson's claim against Wellpath thus invokes municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). To state a claim of *Monell* liability, a plaintiff must allege that the violation of his constitutional rights occurred because of a policy or custom. *Monell*, 436 U.S. at 694. Accordingly, "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014). The overarching question is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The Eastern District of Michigan addressed a similar *Monell* claim against a prison healthcare provider in *Jackson v. Corizon Health Inc.*, No. 2:19-CV-13382, 2020 WL 3529542, at *3 (E.D. Mich. June 30, 2020). There, the plaintiff alleged deliberate indifference stemming from

10

Case 3:21-cv-00319 Document 185 Filed 03/14/24 Page 10 of 12 PageID #: 2460

a doctor's refusal to approve colostomy reversal surgery on grounds that it was not a "medical necessity" based on a "restrictive" internal policy to save money. *Id.* at *2, 4. The court rejected a magistrate judge's recommendation that the plaintiff's deliberate indifference claim be dismissed on grounds "that a failure to authorize a colostomy reversal—even if motivated by financial rather than medical concerns—cannot constitute a deliberate indifference claim under the Eighth Amendment." *Id.* The court found that the plaintiff alleged that the defendants "denied him a colostomy reversal not based on the medical opinion of a medical professional on the appropriate course of treatment, but because of a policy or practice of delaying or denying all non-emergent or life threatening treatments in order to save money." *Id.* at *3. Accordingly, the court found, "the factual allegations . . . plausibly allege that Defendants refused to provide treatment of a serious medical need for nonmedical reasons in violation of the Eighth Amendment." *Id.* (citing *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017), for the proposition that "'[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity" (alterations in original)). The court reaffirmed this principle in denying the defendants' motion for summary judgment, finding that, "if Plaintiff raises a genuine issue of material fact that the decision [not to approve surgery] was not based on medical judgment, but rather on non-medical factors such as cost, the decision of whether the subjective prong [of the deliberate indifference analysis] has been met must be left to the factfinder."[5] *Jackson v. Corizon Health Inc.*, 596 F. Supp. 3d 834, 839 (E.D. Mich. 2022).

---

[5] Wellpath has not argued that treatment of Hudson's hernia is not a sufficiently serious medical need to satisfy the deliberate indifference analysis's objective component.

Wellpath argues (1) that Hudson "received the medical treatment he requested, and now files suit because me merely disagrees with treatment decisions made by the medical providers" and (2) that Hudson "has relied upon conclusory allegations that medical staff was [sic] indifferent to his needs without pleading specific facts to show that indifference" and therefore "does not meet the higher standards of a constitutional deliberate indifference claim." (Doc. No. 152, PageID# 2192.) Wellpath does not address Hudson's claim that its policy—and not Leveck's medical judgment—was the reason Hudson did not receive hernia repair surgery. Because Wellpath's arguments do not intersect with Hudson's allegations against it, judgment on the pleadings is not warranted.

## IV. CONCLUSION

For these reasons, Wellpath's motion for judgment on the pleadings (Doc. No. 151) will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge